Wardlaw, J.
dissenting. According to the report, the defendant had charge of the slaves. All inquiries, then, as to the ordinary powers of an overseer, or as to the power conferred upon this defendant, are cut off. Under our statute, the person having “the care and management” of a slave— whether overseer, hirer, borrower, son of the owner, friend or agent, when it appears that he had the care and management, expressed in the report by “charge,” must be held to have just the same right to license trading with the slave which the owner has — and if he can license it in others, he may do it himself. If he abuses his power, like other unfaithful trustees he should be removed, but the acts which the trust legalized, so long as he held it, cannot be considered unlawful, much less criminal.
It is a great abuse for an overseer to corrupt slaves, by selling liquor to them; but sometimes it may be commendable for an overseer to let the slaves confided to him have liquor, and even to stimulate their industry by affording to them this gratification in exchange for what their labor has produced in the time allowed to them. There may be immense diversity between the cases, which would all be cases of selling liquor by an overseer to the slaves under him. It is enough to say that the law (except in the special cases of shop-keepers, retailers, and distillers,) makes no difference between liquor and other commodities, and the seemingly ruinous nature of the abuse practiced by this defendant, does not take him out of the pale of the law. If he had sold them arsenic, to be used in poisoning a human creature, or abolition pamphlets, he would have done worse than he has done: but he would not then, however guilty under other laws, have come any more within the statute against trading with slaves than I think he now does.

Motion refused.